# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

RICHARD SORICELLI, individually and
as Assignee of Peggy Costin,

    Plaintiff,

v.                                                  Case No: 8:16-cv-1535-T-30TBM

GEICO INDEMNITY COMPANY,

    Defendant.

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Doc. 38), Plaintiff's Response in Opposition (Doc. 48), and Defendant's Reply (Doc. 56). Upon review, the Court concludes that it must deny Defendant's motion.

## FACTUAL BACKGROUND[1]

This is a third-party insurance bad faith action that stems from an automobile accident that occurred on October 10, 2009. Peggy Costin drove while intoxicated and struck a guard shack at the West Gate River Ranch Complex. The crash completely demolished the guard shack and injured the guard, Richard Soricelli. An ambulance took Soricelli to Lake Whales Hospital, where he received preliminary treatment for his injuries. His initial diagnoses included an L2 spinal fracture, multiple bruising, a head injury, and the need for follow up with an orthopedic surgeon.

---

[1] These facts are interpreted in a light most favorable to Plaintiff, the non-movant.

At the time of the accident, Costin was driving Richard Costin's car. R. Costin had a car insurance policy with GEICO that carried a bodily injury limit of $10,000 per person. R. Costin reported the accident to GEICO on October 12, 2009.

GEICO assigned the claim to insurance adjuster Shelly Maldonado of its Continuing Unit (i.e., the unit that handles claims with severe injuries). Maldonado began her investigation of the claim immediately. She determined that R. Costin's policy provided coverage for Costin. She also called River Ranch to get additional information about Soricelli's injuries.

On October 13, 2009, River Ranch returned Maldonado's call. It advised her of Soricelli's diagnoses and referral to an orthopedic surgeon. That same day, Maldonado requested a copy of the police report. She also sent a letter to Costin and R. Costin, advising them that GEICO's "preliminary investigation" indicated that Soricelli's bodily injury claim might exceed the $10,000 policy limit.

On October 19, 2009, GEICO received photos of the demolished guard shack from River Ranch. Later that day, Maldonado's supervisor Richard Seavey instructed Maldonado to "be prepared to tender to the ped[estrian] once we have info on the [worker's compensation] lien." (Doc. 38-3, p. 6.) At his deposition, Seavey testified that he wrote this note based in part on the extent of Soricelli's injuries.

On October 20, 2009, GEICO's Regional Claims Manager Mark Sugden reviewed Maldonado's file and instructed her that she "needed to make contact and start [the] settlement process." (Doc. 38-3, p. 7.) Sugden made this instruction because the accident "was an auto versus a pedestrian and . . . the limits were 10/20 and the driver was DUI[,] . . . [indicating that] you have a potential for a claim that could be in excess of the policy

2

limits." (Doc. 48-1, 39:9-16.) On November 4, 2009, Sugden entered a second note for Maldonado, asking, "Are we going to make contact with the injured [claimant]?" (Doc. 38-3, p. 15.) Maldonado did not contact Soricelli or start the settlement process.

Over the next few weeks, Maldonado had communications with River Ranch and Soricelli's worker's compensation carrier. She asked for information about Soricelli's medical treatment and medical bills but did not get all of the information she needed. She did not have a signed authorization that would allow her to obtain Soricelli's medical records, but she did not attempt to obtain one.

On November 25, 2009, Maldonado received a phone call from Loretta Pace, a case manager at Metnick & Levy law firm. Pace advised Maldonado that her firm represented Soricelli. She told Maldonado that the accident had been very serious, it almost killed Soricelli, and the case was a policy limits case. Maldonado informed Pace that GEICO would be in a position to tender the $10,000 policy limit once she received confirmation of Soricelli's injuries. Pace indicated that she would send Maldonado a copy of Soricelli's medical records and that the firm would handle Soricelli's worker's compensation lien.

That same day, Pace sent Maldonado a demand letter requesting tender of the $10,000 within 30 days. This demand was based on Soricelli's entitlement to collect "past and future economic damages for medical bills, . . . pain and suffering, and any applicable lost wages or future earning capacity claims." (Doc. 38-20.) The letter stated that failure to tender the $10,000 within the 30 days would be considered bad faith. The letter reiterated that the the firm would handle Soricelli's lien, and it included copies of Soricelli's medical records for Maldonado's review. These records demonstrated that Soricelli had accrued over $10,000 in medical bills due to the accident.

3

The Parties dispute whether Maldonado received this letter and the medical records. Maldonado testified that she did not, and GEICO has submitted evidence to suggest that Pace accidentally mailed the letter to State Farm. (Doc. 38-20; Doc. 38-21.) However, there is also testimony that Pace faxed the documents (Doc. 38-20; Doc. 48-5, 16:10-13), as well as evidence suggesting that Maldonado knew about a 30-day deadline (Doc. 38-10). Either way, Maldonado did not tender the $10,000 within 30 days.

The Parties also dispute whether Maldonado re-requested Soricelli's medical records after Pace sent the demand letter. Maldonado states that she made calls to Pace on January 5, January 25, and February 3 of 2010 to request the copies of Soricelli's medical records and confirmation that the firm would handle the worker's compensation lien. Pace denies that she received these messages from Maldonado. She testified that, if she had, she would have re-sent the requested information. The Parties agree that Maldonado did not make any written requests for Soricelli's medical records, or any other information, from the firm during this timeframe. This is true even though the firm had specifically requested that she make any requests for information in writing and GEICO's internal policies required Maldonado to send follow-up letters memorializing her phone communications.

Maldonado called Pace on March 4, 2010, at which time Pace advised her that Soricelli's case had been transferred to the firm's litigation department. Maldonado then sent a letter to Metnick, Soricelli's attorney. She explained that she had spoken to Pace on November 25, Pace had advised that she would send her confirmation of Soricelli's injuries and the fact that the firm would handle the lien, and she had not yet received that information. Pace did not mention any subsequent requests for this information, nor did she ask Metnick to provide her with this information. She did not offer to tender the policy

4

limits if she received confirmation of Soricelli's injuries. She made only one request: "If you have filed suit, please provide us with a courtesy copy of the same." (Doc. 38-12.)

On April 19, 2010, GEICO received notice that Hartford's worker's compensation lien amounted to $27,980.00. Maldonado did not offer to tender the $10,000 policy limit because did not see the notice until several weeks later.

On May 11, 2010, Soricelli filed a lawsuit against Costin in Palm Beach County, Florida. On May 18, 2010, Maldonado called Pace to advise that GEICO could tender the $10,000 if it received confirmation that the law firm would handle the worker's compensation lien. In July 2010, Soricelli's attorney wrote to GEICO, explaining that as a result of GEICO's "inexcusable delay and improper handling of [Soricelli's] case," and the "mental anguish" it caused Soricelli, he was no longer interested in settling with Costin for the policy limits. (Doc. 38-18.) Maldonado tendered the $10,000 policy limit in October 2010. Thereafter, Soricelli's case proceeded to a jury trial, and Soricelli obtained a judgment in the amount of $89,110.18 against Costin.

**SUMMARY JUDGMENT STANDARD**

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will

5

identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories, and admissions and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

**DISCUSSION**

An insurer owes a duty of good faith to its insured. *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 672 (Fla. 2004) (citing *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980)). In other words, "[a]n insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of

ordinary care and prudence should exercise in the management of his own business." *Id*. at 668 (quoting *Gutierrez*, 386 So. 2d at 785). Pursuant to this good-faith duty, an insurer "must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Id.* at 669 (quoting *Gutierrez*, 386 So. 2d at 785). At its core, the good-faith duty requires the insurer to act with "due regard for the [insured's] interests." *Id*. at 677.

To assess whether the insurer has fulfilled its good-faith duty, the court must review the totality of the circumstances. *Berges*, 896 So. 2d at 680. However, in doing so, the court must focus on the actions of the insurer and not those of the claimant or his attorney. *Id.* at 677. "In most cases, . . . the inherently flexible nature of the 'totality of the circumstances' standard renders a bad-faith claim unsuitable for summary disposition." *Moore v. GEICO Gen. Ins. Co.*, 633 F. App'x 924, 927-28 (11th Cir. 2016) (citation omitted); *see also Gutierrez*, 386 So. 2d at 785 ("The question of failure to act in good faith . . . is for the jury.").

GEICO argues that the Court should grant summary judgment in its favor because no reasonable jury could find that it acted in bad faith in handling Soricelli's claim. According to GEICO, Maldonado promptly began her investigation and diligently investigated the extent of Soricelli's damages. Any delay in tendering the policy limits was due to Soricelli's law firm ignoring Maldonado's requests for medical records. Once Maldonado had sufficient information regarding Soricelli's injuries, she tendered the full $10,000 policy limit. She was not required to do more.

A reasonable jury might disagree. Soricelli did not file his lawsuit against Costin until May 2010, seven months after the accident. It is notable that Maldonado did not tender the policy limit until after Soricelli filed suit, even though GEICO determined from the get-go that Costin risked an excess judgment. This delay is even more pronounced because, within ten days of the accident, Maldonado's supervisors had instructed her to begin the settlement process and to be prepared to tender the policy limit. Although Maldonado had an obligation to investigate Soricelli's damages, it is not clear that it was reasonable for this investigation to take more than seven months. The extensive time delay, when coupled with Maldonado's disregard for her supervisors' instructions, could suggest that Maldonado failed to use "the same degree of care and diligence" that GEICO would have exercised "in the management of [its] own business," thereby exposing Costin to the unreasonable risk of an excess judgment.

Moreover, there are material factual disputes that preclude summary judgment. Most notably, the Parties dispute whether Maldonado received Soricelli's demand letter, whether she followed up with Soricelli's law firm for his medical records between November 2009 and March of 2010, and whether Soricelli would have settled for the policy limits at any time after the car accident[2]. The jury's resolution of these disputes will have a significant impact on the analysis of whether GEICO acted in bad faith. If Maldonado knew of the settlement demand and failed to advise Costin of it, or if she failed to tender the $10,000 policy limit within the 30-day deadline after receiving clear evidence that Soricelli's damages exceed the limit, the jury may well find that GEICO acted in bad faith.

---

[2] Soricelli's deposition testimony on this point was inconsistent.

If, however, Maldonado had no notice of the settlement demand and her requests for Soricelli's medical records were repeatedly ignored by Soricelli's attorney, the jury could easily reach the opposite conclusion. Likewise, if Soricelli were never willing to settle with Costin for the policy limits, the jury would be hard-pressed to find that Maldonado's actions are what hindered settlement.

In sum, a jury could find that GEICO did not handle Soricelli's claim with the same degree of care that it would have used to handle its own affairs, and these failures could support a determination that GEICO acted in bad faith. For this reason, the Court cannot grant summary judgment.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Doc. 38) is denied.

**DONE** and **ORDERED** in Tampa, Florida, on August 4th, 2017.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record